# IN THE UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF MISSOURI

| | |
|---|---|
| JEANETTE SCOTT, | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) Case No. 24-00541-CV-W-SRB |
| AHTNA ENGINEERING SERVICES, LLC, et al., | ) ) ) |
| Defendants. | ) ) |

## DEFENDANT AHTNA ENGINEERING SERVICES' SUGGESTIONS IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

Respectfully submitted,

Stacy M. Bunck, MO #53229
Jordan Kurdi, MO #72892
**OGLETREE, DEAKINS, NASH, SMOAK
& STEWART, P.C.**
700 W. 47th Street, Suite 500
Kansas City, MO 64112
816.471.1301
816.471.1303 (*Facsimile*)
stacy.bunck@ogletree.com
jordan.kurdi@ogletree.com

**ATTORNEYS FOR DEFENDANT
AHTNA ENGINEERING SERVICES, LLC**

# TABLE OF CONTENTS

I. INTRODUCTION ........................................................................................................1

II. RELEVANT FACTUAL BACKGROUND ...........................................................1

III. RELEVANT LEGAL STANDARDS ....................................................................8

    A. Standards Applicable to Summary Judgment ............................................8

IV. ARGUMENTS AND AUTHORITIES..................................................................9

    A. Ms. Scott's Discrimination Claim Fails as a Matter of Law ...................9

        1. Ms. Scott Cannot Establish a *Prima Facie* Case of Discrimination............9

        2. Ahtna Had a Legitimate, Non-Discriminatory Reason for Not Selecting Ms. Scott ......................................................................................11

        3. Ms. Scott Cannot Demonstrate Pretext........................................................11

    B. Ms. Scott's FMLA Claim Fails as a Matter of Law .............................13

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Barber v. C1 Truck Driver Training, LLC*,
   656 F.3d 782 (8th Cir. 2011) ............................................................................................... 11

*Brown v. McDonnell Douglas Corp.*,
   113 F.3d 139 (8th Cir. 1997) .......................................................................................... 10, 12

*Burrow v. Boeing Co.*, No. 4:09cv2073 TCM, 2011 U.S. Dist. LEXIS 45439, *17
   (Mo. E.D. April 27, 2011) ..................................................................................................... 8

*Corkrean v. Drake Univ.*,
   55 F.4th 623 (8th Cir. 2022) ................................................................................................ 14

*Crossland v. Hy-Vee, Inc.,* No. 2:18-CV-04215-NKL, 2019 WL 5847844 (W.D. Mo.
   Nov. 7, 2019) ........................................................................................................................ 11

*Ebersole v. Novo Nordisk, Inc.*,
   758 F.3d 917 (8th Cir. 2014) ............................................................................................... 14

*Fercello v. Cnty. of Ramsey*,
   612 F.3d 1069 (8th Cir. 2010) ............................................................................................... 8

*Gross v. FBL Fin. Servs., Inc.*,
   557 U.S. 167 (2009) ............................................................................................................... 9

*Huntsman v. MMC Corp.*,
   No. 5:21-CV-06138-RK, 2023 WL 2192238 (W.D. Mo. Feb. 23, 2023) ............................ 14

*Jones v. Jefferson City Pub. Sch.*,
   Case No. 2:18-cv-4054, 2019 U.S. Dist. LEXIS 38373 (W.D. Mo. Mar. 11,
   2019) ...................................................................................................................................... 8

*Kelleher v. Aerospace Cmty. Credit Union*,
   No. 4:95CV632 JCH, 1996 WL 498107 (E.D. Mo. July 2, 1996), *aff'd sub nom.
   Lewis v. Aerospace Cmty. Credit Union*, 114 F.3d 745 (8th Cir. 1997) ............................. 13

*LaBranche v. Cir. Ct. of Jackson Cnty.*,
   703 S.W.3d 226 (Mo. App. W.D. 2024) .............................................................................. 10

*Lewis v. SW Bell Tel. Co.*,
   Case No. 20-cv-03373-SRB, 2022 U.S. Dist. LEXIS 53946 (W.D. Mo. March
   25, 2022) ........................................................................................................................... 9, 12

*Lind v. Missouri Emps. Mut. Ins. Co.*,
   No. 05-4312-CVV-NKL, 2007 WL 1629919 (W.D. Mo. June 4, 2007) ............................. 13

*Malloy v. U.S. Postal Serv.*,
   756 F.3d 1088 (8th Cir. 2014) ............................................................................................... 14

*Moreland v. Nielsen*,
   No. 17-00425-CV-W-ODS, 2018 WL 4997648 (W.D. Mo. Oct. 15, 2018), *aff'd
   sub nom. Moreland v. Wolf*, 828 F. App'x 344 (8th Cir. 2020) .............................................. 10, 13

*Poitras v. Glaxo SmithKline Consumer Healthcare, LP*,
   635 F. Supp. 2d 1003 (E.D. Mo. 2009) ...................................................................................... 13

*Quinn v. St. Louis County*,
   653 F.3d 745 (8th Cir. 2011) ..................................................................................................... 13

*Rahlf v. Mo-Tech Corp.*,
   642 F.3d 633 (8th Cir. 2011) ................................................................................................ 10, 11

*Reeves v. Sanderson Plumbing Prods., Inc.*,
   530 U.S. 133 (2000) ..................................................................................................................... 8

*Rodgers v. U.S. Bank, N.A.*,
   417 F.3d 845 (8th Cir. 2005) ..................................................................................................... 13

*Rooney v. Rock-Tenn Converting Co.*,
   878 F.3d 1111 (8th Cir. 2018) ............................................................................................. 11, 12

*Saunders v. Southland Corp.*,
   779 F. Supp. 1009 (E.D. Mo. 1991) ........................................................................................... 11

*Schierhoff v. GlaxoSmithKline Consumer Healthcare, L.P.*,
   444 F.3d 961 (8th Cir. 2006) ....................................................................................................... 9

*St. Mary's Honor Ctr. v. Hicks*,
   509 U.S. 502 (1993) ..................................................................................................................... 8

*Thomas v. Corwin*,
   483 F.3d 516 (8th Cir. 2007) ....................................................................................................... 8

*Thompson v. W.-S Life Assurance Co.*,
   82 S.W.3d 203 (Mo. App. E.D. 2002) ......................................................................................... 9

*Torgerson v. City of Rochester*,
   643 F.3d 1031 (8th Cir. 2011) ................................................................................................ 8, 11

*Ward v. Int'l Paper Co.*,
   509 F.3d 457 (8th Cir. 2007) ..................................................................................................... 10

**Other Authorities**

Fed. R. Civ. P. 56(a) ............................................................................................................................. 8

## I. INTRODUCTION

Ahtna Engineering Services, LLC ("Ahtna") is a subsidiary of Ahtna, Inc., an Alaska Native Regional Corporation. From September 2017 to April 2023, Ahtna, while in a joint venture with Advancia Technologies, LLC ("Advancia"), held a federal contract to physically maintain records at the National Records Center ("NRC") on behalf of the Social Security Administration ("SSA") in Independence, Missouri. In the last two decades, the SSA has migrated from paper to electronic files, which has impacted the number of Records Maintenance Technicians ("RMT") needed to physically maintain files at the NRC.

In 2022, a new joint venture between Advancia and an affiliate of Ahtna was formed to submit a competitive bid for a new federal contract at the NRC for the SSA. To submit a competitive bid reflective of the need for fewer RMTs, Defendants decided that fewer Assistant Supervisor positions were needed to supervise fewer RMTs. Defendants identified an objective process to identify which individuals to hire as Assistant Supervisors for the new contract.

After a stagnant career with documented failings in her interpersonal and leadership skills, Ahtna chose not to select Jeanette Scott ("Ms. Scott") for one of its limited Assistant Supervisor positions under the new federal contract. Despite Ahtna selecting another candidate who is both older than Ms. Scott and who also exercised her rights under the Family Medical Leave Act ("FMLA"), Ms. Scott sued Ahtna for age discrimination and FMLA retaliation. As explained below, both of these claims fail, and Ahtna is entitled to summary judgment on all claims.

## II. RELEVANT FACTUAL BACKGROUND

Pursuant to Federal Rule of Civil Procedure and Local Rule 56.1, Ahtna offers the following statement of uncontroverted facts in support of its Motion for Summary Judgment.[1]

---

[1] These facts are being offered for purposes of summary judgment, only. In the event this case proceeds to trial, Ahtna reserves the right to contest any of the facts offered for summary judgment, and to offer additional facts at trial.

1

**Background Information Regarding the Parties**

1. Ms. Scott was born in October 1968. (Ex. A, Scott Dep., 8:25-9:2).

2. Ahtna and its affiliates are Alaska-based businesses that perform a wide range of services nationwide, including construction, environmental, administrative, and professional services. (Ex. A, Scott Dep., 9:6-10).

3. Among other business endeavors, Ahtna performs contract work at the NRC in Independence, Missouri. (Ex. A, Scott Dep., 9:11-22).

4. To perform these services at the NRC, Ahtna partnered with Advancia, a federal contracting company, with multiple federal contracts in various locations. (Ex. B, Marshall Dep., 10:4-9; 14:1-21).

5. Ahtna and Advancia created a joint venture, Advancia Ahtna JV, LLC, to compete for and perform a federal contract for the SSA at the NRC between 2017 and 2023. (Ex. B, Marshall Dep., 14:11-21; 83:18-19; Ex. C, Advancia 30(b)(6) Dep., 23:25-24:12).

6. At all relevant times, Joe Martinez was the NRC's Site Manager, employed by Ahtna. (Ex. D, Martinez Dep., 6:7-9; 12:6-11). As of March 2023, Mr. Martinez was 53 years old. (Ex. E, Von Halle Dec., ¶ 4).

7. At all relevant times, Michelle Marshall was the General Manager of Advancia, and her duties included overseeing the management of the NRC contract, as well as other federal contracts. (Ex. B, Marshall Dep. 9:6-10:9).

8. At all relevant times, Rob Buzan was the Alternate Site Manager at the NRC, employed by Advancia. (Ex. F, Buzan Dep., 9:23-10:4; 34:15-18). As of March 2023, Mr. Buzan was 50 years old. (Ex. E, Von Halle Dec., ¶ 4).

9. At all relevant times, Jade Von Halle was an Assistant Operations Manager at the NRC, employed by an affiliate of Ahtna that is also wholly-owned by Ahtna, Incorporated. (Ex. G, Von Halle Dep., 10:14-11:2; 12:4-13). As of March 2023, Ms. Von Halle was 42 years old. (Ex. E, Von Halle Dec., ¶ 3).

10. At all relevant times, Kjersti Parker was the Director of Professional Services for Advancia, assisting with the management of the NRC. (Ex. H, Parker Dep., 11:17-12:17; 13:14-16). As of March 2023, Ms. Parker was 42 years old. (Ex. E, Von Halle Dec., ¶ 4).

**Ms. Scott's Employment History at the NRC**

11. On May 17, 2002, Ahtna hired Ms. Scott to work at the NRC. (Ex. A, Scott Dep., 10:14-24).

12. On May 1, 2011, when Ms. Scott was 42 years old, Ahtna promoted Ms. Scott to Assistant Supervisor after she applied and interviewed for an open position. (Ex. A, Scott Dep., 11:11-12:5).

13. Ms. Scott did not apply for any other promotions at Ahtna because she did not feel that she was ready for a higher-level position. (Ex. A, Scott Dep., 12:24-14:1).

14. Ahtna ended Ms. Scott's employment on October 5, 2017. (Ex. A, Scott Dep., 14:15-18).

15. Due to a need to adjust the workloads to comply with the joint venture agreement, Ms. Scott was transferred to Advancia from October 7, 2017 through October 31, 2018, and rehired by Ahtna effective November 1, 2018. (Ex. A, Scott Dep., 14:12-14; 15:22-16:3; Ex. C, Advancia 30(b)(6) Dep., 31:3-25).

16. On November 1, 2018, when Ms. Scott was 50 years old, Ahtna rehired Ms. Scott to work at the NRC. (Ex. A, Scott Dep., 15:22-16:3).

3

17. Ms. Scott continued to work as an Assistant Supervisor at the NRC until the termination of her employment on March 29, 2023. (Ex. A, Scott Dep., 12:15-20; 16:10-13).

18. As of March 2023, Ms. Scott was 54 years old. (Ex. A, Scott Dep., 16:14-16).

19. As an Assistant Supervisor, Ms. Scott was responsible for helping with paperwork at the NRC, and ensuring the workflow was progressing. (Ex. A, Scott Dep., 16:25-17:4).

20. As an Assistant Supervisor, Ms. Scott understood she was expected to exhibit excellent interpersonal skills, proficiency in oral communications, excellent character and work habits, and the ability to supervise subordinates with fairness and consistency. (Ex. A, Scott Dep., 17:20-18:8).

## Relevant Policies

21. Ms. Scott understood that Ahtna has a written policy of equal employment opportunity without regard to age, among other characteristics. (Ex. A, Scott Dep., 23:12-16).

## Performance Feedback

22. Ms. Scott understood that management believed she needed to work on her interpersonal communication skills. (Ex. A, Scott Dep., 104:21-24).

23. During the 2018-2019 appraisal period, Ms. Scott's goals included being confident in her decisions, using training tools to help with communication, and taking time to confidently and directly get her point across. (Ex. A, Scott Dep., 31:3-23).

24. In her 2020 performance appraisal, Ms. Scott was reminded to ensure she clearly and confidently communicated with her staff, to continue to work on her communication with staff, to continue to work on building rapport with her staff to improve confidence when counseling, and to continue to improve her leadership skills. (Ex. A, Scott Dep., 37:1-2; 38:7-13; 38:21-25; 39:2-5; Ex. I, Dep. Ex. 28).

25. In her 2022 performance appraisal, Ms. Scott's goals included working towards building stronger interpersonal skills with her co-workers, building better teams, and looking for ways to be more assertive when building up interpersonal skills. (Ex. A, Scott Dep., 48:3-17; Ex. J, Dep. Ex. 30).

### Ms. Scott's History of FMLA Leave

26. Ms. Scott took FMLA on and off beginning in 2015, without any issue and without any negative comments about her FMLA use. (Ex. A, Scott Dep., 91:21-92:4; *see also* 52:14-53:1, 53:21-54:9; 55:2-17; 57:1-14; 59:13-25).

27. Ahtna approved Ms. Scott's request to take FMLA leave to care for her husband in 2015, and permitted her to take several days of FMLA leave while he was in the hospital. (Ex. A, Scott Dep., 50:12-52:17).

28. In 2016, 2019, and 2021, Ahtna approved Ms. Scott's request for FMLA leave for her own serious health condition. (Ex. A, Scott Dep., 53:12-20; 54:18-55:1; 56:7-13; 56:18-57:4).

29. Ahtna approved Ms. Scott's request for continuous leave from September 6, 2022 through December 6, 2022 for her own serious health condition. (Ex. A, Scott Dep., 58:12-59:12).

### NRC Contract Change

30. Throughout Ms. Scott's employment at the NRC, the SSA kept less records in paper form at the NRC and maintained more records digitally. (Ex. A, Scott Dep., 100:3-10).

31. As a result, the SSA required less work at the NRC to store and retrieve paper records, and fewer employees to complete the work. (Ex. A, Scott Dep., 100:11-18).

32. Given the reduced workload, and to ensure their bid was competitive, Defendants determined fewer Assistant Supervisors would be needed for the 2023 contract. (Ex. B, Marshall Dep., 17:18-22; 49:12-17; Ex. C, Advancia 30(b)(6) Dep., 17:25-18:8; 19:16-23).

5

33. In August 2022, management held a meeting with the Assistant Supervisors and informed them that the NRC's contract with the SSA was ending in 2023, and that the Assistant Supervisors needed to apply and submit resumes to be considered for work under the new contract. (Ex. A, Scott Dep., 66:14-67:21).

34. Ms. Scott applied for an Assistant Supervisor position under the new contract. (Ex. A, Scott Dep., 67:22-68:6).

35. In addition to Ms. Scott, W.K., T.A., M.L., Tammy Barr, H.E., S.J., J.M., A.W., and V.M. applied for an Assistant Supervisor position under the new contract. (Ex. H, Parker Dep., 70:18-23; Ex. K, Dep. Ex. 81).

36. On January 10, 2023, Mr. Martinez, Mr. Buzan, Ms. Parker, and Ms. Von Halle interviewed Ms. Scott for an Assistant Supervisor position under the new contract. (Ex. A, Scott Dep., 68:24-69:7).

37. Ms. Scott was nervous during her January 10, 2023 interview. (Ex. A, Scott Dep., 69:16-17).

38. Ms. Scott does not have any personal knowledge that her interview was conducted differently than the interviews of other Assistant Supervisor candidates. (Ex. A, Scott Dep., 69:20-70:9).

39. Of the other Assistant Manager candidates, several took FMLA leave during their employment with Ahtna, including M.L., V.M., and A.W. (Ex. A, Scott Dep., 72:1-3; 73:18-23; 78:1-2; 79:4-9; 80:11-12; 81:15-18; 83:4-6; 84:4-9).

40. In selecting applicants for the Assistant Supervisor position, Mr. Martinez, Mr. Buzan, Ms. Parker, and Ms. Von Halle considered the interviews, attendance, performance, and

discipline of each candidate. (Ex. G, Von Halle Dep., 21:8-15; Ex. H, Parker Dep., 24:17-25:2; 32:12-15; Ex. K, Dep. Ex. 81).

41.     The ages of the candidates were not considered in the selection process. (Ex. G, Von Halle Dep., at 117:8-12).

42.     In March 2023, T.A. (49 years old), H.E. (43 years old), S.J. (45 years old), W.K. (47 years old), M.L. (57 years old), and J.M. (36 years old) were offered Assistant Supervisor positions under the new contract, while V.M. (52 years old) and A.W. (42 years old) were offered Supervisor positions. (Ex. G, Von Halle Dep., 20:12-21:7; Ex. K, Dep. Ex. 81).

43.     Mr. Martinez, Mr. Buzan, Ms. Parker, and Ms. Von Halle did not know the ages of any of the Assistant Supervisor candidate. (Ex. D, Martinez Dep., at 145:8-10; Ex. F, Buzan Dep., at 35:17-36:9; Ex. G, Von Halle Dep., at 34:3-37:18; Ex. H, Parker Dep., at 71:19-75:13).

44.     On March 29, 2023, Mr. Martinez, Mr. Buzan, Ms. Parker, and Ms. Von Halle informed Ms. Scott that she was not selected as an Assistant Supervisor under the new contract. (Ex. A, Scott Dep., 84:15-85:8).

## Ms. Scott's Claims

45.     Ms. Scott does not allege any unlawful behavior by Ahtna other than the termination of her employment. (Ex. A, Scott Dep., 96:15-17; 96:24-97:2).

46.     Ms. Scott believes her employment was terminated because of her age because she was one of the oldest Assistant Supervisors at the time of her termination, and because Ahtna had previously terminated the employment of other older Assistant Supervisors. (Ex. A, Scott Dep., 115:6-10).

47.     No one made any negative comments about Ms. Scott's age or treated her differently based on her age. (Ex. A, Scott Dep., 116:17-22).

48. Ms. Scott does not know the dates of birth of any of the other Assistant Supervisors who applied for a position under the new contract. (Ex. A, Scott Dep., 213:13-17).

49. Ms. Scott does not know that she was treated any differently than any other Assistant Supervisor candidates during the selection process. (Ex. A, Scott Dep., 218:4-9).

## III. RELEVANT LEGAL STANDARDS

### A. Standards Applicable to Summary Judgment

"Summary judgment is warranted where 'the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'"[2] The party moving for summary judgment bears the burden of establishing a lack of any genuine issues of material fact.[3] However, "[t]he party opposing summary judgment cannot rest solely on the pleadings, but instead must set forth specific facts showing there is a genuine issue of material fact for trial."[4] "Mere allegations, unsupported by specific facts or evidence beyond the nonmoving party's own conclusions, are insufficient to withstand a motion for summary judgment."[5]

Courts should not "treat discrimination differently from other ultimate questions of fact."[6] As the Eighth Circuit has held, "there is no 'discrimination case exception' to the application of summary judgment, which is a useful pretrial tool to determine whether any case, including one alleging discrimination, merits a trial."[7] As this Court has noted, "in deciding cases brought under

---

2   *Jones v. Jefferson City Pub. Sch.*, Case No. 2:18-cv-4054, 2019 U.S. Dist. LEXIS 38373, at *4 (W.D. Mo. Mar. 11, 2019) (quoting Fed. R. Civ. P. 56(a)).
3   *Torgerson v. City of Rochester,* 643 F.3d 1031, 1042 (8th Cir. 2011).
4   *Thomas v. Corwin*, 483 F.3d 516, 526 (8th Cir. 2007).
5   *Id.* at 527.
6   *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 148 (2000) (citing *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 524 (1993)).
7   *Torgerson,* 643 F.3d at 1043; *see also Burrow v. Boeing Co.*, No. 4:09cv2073 TCM, 2011 U.S. Dist. LEXIS 45439, *17 (Mo. E.D. April 27, 2011) (citing *Fercello v. Cnty. of Ramsey*, 612 F.3d 1069, 1077 (8th Cir. 2010) ("[W]hile employment discrimination cases are often fact intensive and dependent on nuance in the workplace, they are not immune from summary judgment, and there is no separate summary judgment standard for employment discrimination cases.")).

the MHRA, we are guided not only by Missouri law, but also by applicable federal employment discrimination decisions."[8]

## IV. ARGUMENTS AND AUTHORITIES

### A. Ms. Scott's Discrimination Claim Fails as a Matter of Law

Ms. Scott alleges that Ahtna discriminated against her based on her age by terminating her employment.[9] This claim fails as a matter of law.

#### 1. Ms. Scott Cannot Establish a *Prima Facie* Case of Discrimination

Absent direct evidence of discrimination, courts apply the *McDonnell Douglas* burden-shifting framework to analyze age discrimination claims under the Missouri Human Rights Act ("MHRA").[10] Under that framework, Ms. Scott must first establish a *prima facie* case of discrimination.[11] If she meets that burden, the burden shifts to Ahtna to articulate a legitimate, non-discriminatory reason for its actions.[12] If Ahtna meets that burden, the burden shifts back to Ms. Scott to show that reason was pretextual.[13] At all times, the burden of persuasion remains with Ms. Scott.[14]

To establish a *prima facie* case of age discrimination in a reduction in force ("RIF") case, Ms. Scott must show that (i) she is at least 40 years old, (ii) she met the applicable job qualifications, (iii) she suffered an adverse employment action, and (iv) "there is some additional

---

[8] *Lewis v. SW Bell Tel. Co.*, Case No. 20-cv-03373-SRB, 2022 U.S. Dist. LEXIS 53946, at *11 (W.D. Mo. March 25, 2022) (citing *Thompson v. W.-S Life Assurance Co.*, 82 S.W.3d 203, 206 (Mo. App. E.D. 2002).
[9] *See* Amended Complaint, ¶ 87.
[10] *See Schierhoff v. GlaxoSmithKline Consumer Healthcare, L.P.,* 444 F.3d 961, 964 (8th Cir. 2006).
[11] *See id.*
[12] *See id.* at 964-65.
[13] *See id*. at 965.
[14] *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 176 (2009).

evidence that age was a factor in the employer's termination decision."[15] Ms. Scott cannot meet this burden because she cannot present any evidence that age was a factor in Ahtna's decision regarding which candidates to select for the limited positions under the new contract.[16]

In a RIF case, a plaintiff cannot meet this final element by producing evidence that a substantially younger worker replaced her or assumed some of her duties.[17] Instead, Ms. Scott must present evidence of a discriminatory animus which goes beyond the simple fact that one of the employees was not in the protected age group. (SOF ¶ 42). She cannot meet this burden. In fact, five of the six candidates chosen for the Assistant Supervisor positions were within the protected age group, and one was even *older* than Ms. Scott. (SOF ¶ 42). Perhaps most fatal to her claim, Ms. Scott, at 54 years old, was *younger* than one of the candidates chosen to continue under the new contract. (SOF ¶¶ 18, 42). It defies logic that Ahtna was motivated to get rid of Ms. Scott because of age animus, yet selected members of the same protected class, and a candidate *older* than Ms. Scott, for the Assistant Supervisor positions.[18]

Additionally, that the decisionmakers are also in the protected age group weakens any inference of age discrimination.[19]

Because Ms. Scott cannot present any evidence even marginally suggesting her age was a factor in Ahtna's decisions, her *prima facie* discrimination case fails as a matter of law.

---

[15] *Rahlf v. Mo-Tech Corp.*, 642 F.3d 633, 637 (8th Cir. 2011); *see also LaBranche v. Cir. Ct. of Jackson Cnty.*, 703 S.W.3d 226, 233 (Mo. App. W.D. 2024) ("Claims brought under the MHRA 'are guided not only by Missouri law, but also by applicable federal employment discrimination decisions.'" (citation omitted)).

[16] For purposes of this Motion only, and reserving all arguments for trial, Ahtna admits that Ms. Scott is at least 40 years old, met the applicable job qualifications, and was subjected to an adverse employment action.

[17] *Ward v. Int'l Paper Co.*, 509 F.3d 457, 461 (8th Cir. 2007).

[18] *See Brown v. McDonnell Douglas Corp.*, 113 F.3d 139, 142 (8th Cir. 1997) (affirming summary judgment in favor of employer where two of the employees retained where older than the plaintiff).

[19] *See Moreland v. Nielsen*, No. 17-00425-CV-W-ODS, 2018 WL 4997648, at *8 (W.D. Mo. Oct. 15, 2018), *aff'd sub nom. Moreland v. Wolf*, 828 F. App'x 344 (8th Cir. 2020).

## 2. Ahtna Had a Legitimate, Non-Discriminatory Reason for Not Selecting Ms. Scott

Assuming, *arguendo*, the Court concludes that Ms. Scott meets her *prima facie* burden, her claim still fails under the *McDonnell-Douglas* burden-shifting standard. Given the reduced work load at the NRC, Ahtna had a legitimate business need to reduce the number of Assistant Supervisors at the NRC under the new contract.[20] (SOF ¶¶ 30-32). Further, only after interviewing all applicants, and considering the interviews, attendance, performance, and discipline of each applicant, did Ahtna conclude that Ms. Scott was not the best candidate for one of the Assistant Supervisor positions. (SOF ¶ 40). Selecting candidates based on their superior interview performance is legitimate and non-discriminatory.[21] (SOF ¶¶ 37-38, 40-42). Likewise, an employer's belief that other candidates were better qualified for a manager position based on the plaintiff's prior poor performance in a managerial role is also legitimate and nondiscriminatory.[22] (SOF ¶¶ 20, 22-25).

The burden to articulate a non-discriminatory justification is not onerous and need not be demonstrated by a preponderance of the evidence.[23] Consequently, the burden shifts back to Ms. Scott to dispute this reason as pretextual.[24]

## 3. Ms. Scott Cannot Demonstrate Pretext

Ms. Scott cannot demonstrate that Ahtna's legitimate, non-discriminatory reasons for its actions are actually pretext for discrimination. Pretext may be demonstrated in two ways.[25] First, a plaintiff may show pretext by persuading the Court that animus more likely motivated the

---

[20] *Rahlf*, 642 F.3d at 638 (finding RIF needed due to "reduced[ ] customer needs," "concerns about continued profitability," and "decrease in . . . workload" was legitimate, non-discriminatory justification for discharge).
[21] *See Barber v. C1 Truck Driver Training, LLC*, 656 F.3d 782, 788 (8th Cir. 2011).
[22] *Saunders v. Southland Corp.*, 779 F. Supp. 1009, 1015 (E.D. Mo. 1991).
[23] *See Torgerson*, 643 F.3d at 1047.
[24] *See Crossland v. Hy-Vee, Inc.*, No. 2:18-CV-04215-NKL, 2019 WL 5847844, at *16 (W.D. Mo. Nov. 7, 2019).
[25] *See Rooney v. Rock-Tenn Converting Co.*, 878 F.3d 1111, 1117 (8th Cir. 2018).

employer.[26] Alternatively, a plaintiff may show pretext by showing "the employer's explanation is unworthy of credence because it has no basis in fact."[27] "Either route amounts to showing that a prohibited reason, rather than the employer's stated reason, actually motivated the [employment decision]."[28]

Here, Ms. Scott cannot demonstrate pretext under either method. There is simply no evidence that age motivated Ahtna managers (including Mr. Martinez, 53 years old, and Ms. Von Halle, 42 years old) (SOF ¶¶ 6, 9)) to not select Ms. Scott for one of the Assistant Supervisor positions. Likewise, there is no evidence that Ahtna's explanation has no basis in fact.

The age of the person replacing or taking a plaintiff's position is an "important datum" in assessing age discrimination.[29] All but one of the candidates chosen for the Assistant Supervisor positions were within the protected age category. (SOF ¶ 42). And, most importantly, of the candidates selected, one was *older* than Ms. Scott by three years. (SOF ¶¶ 18, 42). This—on its own—destroys any inference that Ahtna could have been motivated by age.[30]

Notably, Ahtna previously promoted Ms. Scott to Assistant Supervisor while she was within the protected age group. (SOF ¶ 12). Further, Ms. Scott was 50 years old at the time Ahtna rehired her from Advancia. (SOF ¶ 16). Ahtna's promotion and rehiring of Ms. Scott when she was already within the protected age category belies any inference that Ahtna's decisions were

---

26   *See id.*
27   *Id.*
28   *Id.*
29   *Lewis*, 467 F.3d at 1136.
30   *See Brown*, 113 F.3d at 142 (affirming summary judgment in favor of employer where two of the employees retained where older than the plaintiff).

based on Ms. Scott's age.³¹ Further, that the decisionmakers are also in the protected age group similarly weakens any inference of age discrimination.³² (SOF ¶¶ 6, 9).

Ms. Scott does not have any evidence that she was treated differently than any of the other individuals who applied for the Assistant Supervisor position, let alone because of her age.³³ (SOF ¶ 49). Further, she concedes that she never heard or was subject to any negative comments related to her age.³⁴ (SOF ¶ 47).

For these reasons, Ms. Scott's discrimination claim fails as a matter of law, and Ahtna is entitled to summary judgment on such claim.

### B.  Ms. Scott's FMLA Claim Fails as a Matter of Law

To state a claim for FMLA retaliation, Ms. Scott must show (1) she exercised her FMLA rights, (2) she suffered an adverse employment action, and (3) there was a causal connection between her action and the adverse employment action.³⁵

Ms. Scott cannot present any evidence of a causal connection between her use of FMLA and Ahtna's decision to not to select her for the new contract. In fact, three of the candidates Ahtna selected used FMLA during their employment. (SOF ¶ 39). This vitiates any retaliatory animus against Ms. Scott's prior use of FMLA.³⁶

Further, Ms. Scott had a long history of using FMLA without issue. (SOF ¶¶ 26-29). That she exercised her FMLA rights for years without negative consequence destroys any retaliatory

---

31  *See Kelleher v. Aerospace Cmty. Credit Union*, No. 4:95CV632 JCH, 1996 WL 498107, at *8 (E.D. Mo. July 2, 1996), *aff'd sub nom. Lewis v. Aerospace Cmty. Credit Union*, 114 F.3d 745 (8th Cir. 1997) (granting summary judgment for employer where plaintiff was hired and promoted while within the protected class); *Lind v. Missouri Emps. Mut. Ins. Co.*, No. 05-4312-CVV-NKL, 2007 WL 1629919, at *7 (W.D. Mo. June 4, 2007).
32  *Moreland*, 2018 WL 4997648, at *8.
33  *Id.* at *4 (citing *Rodgers v. U.S. Bank, N.A.*, 417 F.3d 845 (8th Cir. 2005)).
34  *Lind*, 2007 WL 1629919, at *7.
35  *Quinn v. St. Louis County*, 653 F.3d 745, 754 (8th Cir. 2011).
36  *Poitras v. Glaxo SmithKline Consumer Healthcare, LP*, 635 F. Supp. 2d 1003, 1015 (E.D. Mo. 2009).

inference.[37] Further, Ms. Scott was not on active FMLA at the time of her termination, and in fact had not taken any FMLA leave for the previous three to four months. (SOF ¶ 29). With this large of a gap between her termination and the last time she exercised her FMLA rights there can be no causal connection.[38] Beyond the alleged temporal proximity (which alone is insufficient),[39] Ms. Scott cannot present any other evidence suggesting a retaliatory animus, and thus her FMLA claim fails.

WHEREFORE, Ahtna respectfully requests this Court to grant its motion for summary judgment and dismiss Plaintiff's claims in their entirety with prejudice, and for any further relief the Court deems just and proper.

Respectfully submitted,

/s/ *Jordan Kurdi*
Stacy M. Bunck, MO #53229
Jordan Kurdi, MO #72892
**OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.**
700 W. 47th Street, Suite 500
Kansas City, MO 64112
816.471.1301
816.471.1303 (*Facsimile*)
stacy.bunck@ogletree.com
jordan.kurdi@ogletree.com

**ATTORNEY FOR DEFENDANT
AHTNA ENGINEERING SERVICES, LLC**

---

[37] *See, e.g.*, *Malloy v. U.S. Postal Serv.*, 756 F.3d 1088, 1091 (8th Cir. 2014) (granting summary judgment for employer where plaintiff "used FMLA leave on several other occasions . . . without repercussions," destroying any inference of hostility); *Corkrean v. Drake Univ.*, 55 F.4th 623, 633 (8th Cir. 2022) (granting summary judgment to employer for plaintiffs' failure to demonstrate pretext where plaintiff was "never punished for taking FMLA leave").
[38] *Huntsman v. MMC Corp.*, No. 5:21-CV-06138-RK, 2023 WL 2192238, at *11 (W.D. Mo. Feb. 23, 2023) (finding a three-month gap was "not sufficient on its own to raise any inference of retaliatory motive").
[39] *Ebersole v. Novo Nordisk, Inc.*, 758 F.3d 917, 925 (8th Cir. 2014) (recognizing that "a one-month or two-month lag is too long absent other evidence" for "temporal proximity . . . to establish the causal connection without other evidence of discriminatory animus").

**CERTIFICATE OF SERVICE**

      I hereby certify that on the 2nd day of May, 2025, a true and correct copy of the foregoing was filed electronically with the Clerk of Court using the CM/ECF system which sent notification of such filing to all counsel of record.

      /s/ *Jordan Kurdi*
      **ATTORNEY FOR DEFENDANT**
      **AHTNA ENGINEERING SERVICES, LLC**